WARREN COUNTY BANK v. KEISTER, ADMINISTRATOR.

[No. 11,492.   Filed March 15, 1923.   Mandate modified May 16, 1923.   Final mandate June 8, 1923.]

1. ABATEMENT AND REVIVAL.—*Plea in Abatement.*—*Filing after Plea in Bar.*—A plea in abatement filed after a plea in bar is too late.   p. 138.

2. ACTION.—*Petition for Stay of Proceedings for Indefinite time.* —In an administrator's action to recover from a bank money belonging to the estate and wrongfully paid out to one representing himself to be the administrator, *held* that it was not error for the trial court to overrule a petition for a stay of proceedings for an indefinite time to permit defendant bank to prosecute, and, if possible, recover the funds illegally distributed, it appearing that the bank for more than two years after discovering the facts had failed to make any efforts to follow the fund.   p. 138.

3. TRIAL.—*Motion for Venire de Novo.*—*Requisites.*—*Grounds for Motion.*—No error is presented by the overruling of a motion for a *venire de novo,* where the motion fails to disclose the ground upon which it was made.   p. 138.

4. TRIAL.—*Findings of Fact.*—*Conclusions of Law.*—In an administrator's action to recover from a bank money belonging to the estate and wrongfully paid out to one representing himself as administrator, a finding that there were valid claims against the estate in a specified amount paid from the money wrongfully distributed by the bank, for which amount it should receive credit, *held* a statement of an ultimate fact, and not a conclusion of law.   p. 140.

5. EXECUTORS AND ADMINISTRATORS.—*Wrongful Distribution of Funds by Bank.*—*Payment of Funeral Expenses.*—*Liability of Bank.*—In an administrator's action against a bank to recover money belonging to the estate and wrongfully paid out to one

representing himself as administrator, where the bank honored checks of such administrator *de son tort* for the payment of decedent's funeral expenses and taxes, which checks were drawn by a son of deceased as administrator *de son tort, held,* that the bank was entitled to credit against its debt to the estate for the money so paid out. p. 142.

From Tippecanoe Superior Court; *Henry H. Vinton,* Judge.

Action by James Keister, administrator *de bonis non* with the will annexed of Jonathan Hess, deceased, against the Warren County Bank. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*C. V. McAdams* and *Harry P. Schultz,* for appellant.
*Clyde H. Jones, Victor H. Ringer* and *William R. Ringer,* for appellee.

NICHOLS, C. J.—Action by appellee, as administrator, to recover from appellant funds of the estate of Jonathan Hess, deceased, deposited by him in his lifetime with appellant and charged to have been paid out by the bank on the checks of L. A. Hess, purporting to act at the time as the administrator of the estate but without authority so to do.

The facts involved, as they appear in the special findings, are substantially as follows: Jonathan Hess died October 4, 1916, at the time a resident of Williamsport, Warren county, Indiana. On February 3, 1911, and while a resident of the State of Illinois he executed his last will and testament and on December 6, 1911, while still such resident of Illinois executed a codicil of such will, which will and codicil were probated in the Warren Circuit Court on September 21, 1918. By the terms of such will, after providing for the payment of his debts and liabilities, he devised certain real estate in Vermillion county, Illinois to his wife, Mary C. Hess, during the term of her natural life, also his household effects and goods and chattels and all personal property,

excepting money and securities, to have and to hold during the term of her natural life, with right of disposition. He also bequeathed to his wife $5,000 absolutely. Avancements to his children theretofore made were set out in his will as follows: L. A. Hess, $4,900; Frank S., $2,070; Burt L., $2,629; Lucinda Myler, $87; Nettie Moore, $2,749; John Hess, $4,472; Ella Stewart, $175. Also providing that as his son L. A. Hess had paid two notes for John amounting to $223.80 and interest, unless John should repay L. A., then such amount should be charged against John's estate and the amount thereof paid to L. A. The advancements theretofore made and those to be thereafter made were to be charged against the shares of his children hereinafter set out. At the death of the testator's wife it was provided that the executor should dispose of the remainder of this estate and distribute the proceeds thereof among the above named children subject to their respective advancements made to them. One Wm. C. Cathcart was named as executor, but afterward by codicil the testator named his son L. A. Hess as executor directing that he should be required to give security for the faithful performance of his duties. The widow and children were all living at the time the special findings were filed, and, except L. A. Hess, were all nonresidents of this state. After the execution of his will and before his death, the testator disposed of the Illinois real estate, and hence did not own the same at the time of his death. L. A. Hess named as executor failed to qualify as such or as administrator of the estate. On March 19, 1919, one William Hess was appointed as administrator with the will annexed, and thereafter, on his removal, James Keister, appellee, was appointed administrator *de bonis non* with the will annexed.

When the testator died, he had on general deposit in appellant bank, $506.39, and held a certificate of deposit

on said bank for $5,400, making with interest a total of $5,918.39, all of which the bank knew belonged to the testator.   At his death, the testator had no personal property except a few household goods which were bequeathed to the widow, and which she retained.   He had no real estate except a lot and dwelling house in Williamsport of the value of $2,000, the same having been purchased after the execution of his will.   After the testator's death said Lewis A. (L. A.) Hess went to appellant's bank and informed its officers that he had been appointed under the will to settle his father's estate, and that he did not intend to be appointed or to qualify as executor, but that he desired it to be settled out of court, and thereupon in their presence indorsed the name of "L. A. Hess, Admr. of the Estate of Jonathan Hess," and thereupon the whole account together with $49.78 interest on time deposit, was transferred to "L. A. Hess, Admr."   The bank knew during all of said time that said funds belonged to the estate of Jonathan Hess, and that said L. A. Hess was only pretending to act as such administrator, and that he had never qualified as such, but, notwithstanding such knowledge, it permitted him to draw checks aggregating $5,677.99. After said William Hess was appointed administrator, appellant paid over to him $790.18, and formal demand was made for the balance of said funds the payment of which was refused.   Said L. A. Hess while so pretending to act as administrator, paid by check against said account valid claims against said estate in the sum of $428.10, and by the same method paid the widow for her separate use and benefit, $848.41.   No other sums have been paid by said bank to parties duly entitled thereto. There was no agreement between the widow and children of said testator that said L. A. Hess might make settlement of said estate without qualifying as executor. The widow has not in any way disposed of her bequest

of $5,000, and she has not filed an election to take under the law of this state. At her request, however, said L. A. Hess paid her said sum of $848.41, as a part of her said legacy. Said L. A. Hess, while acting as such pretended administrator, paid claims amounting to $666.73, which were proper charges against said estate, but not chargeable against the bequests to the widow. There remained due appellee from appellant bank, $3,662.86, with interest at 6% from March 3, 1920, the date of demand. On these findings, the court stated its conclusion of law in favor of appellee. After overruling appellant's motion for a *venire de novo,* and its motion for a new trial, the court rendered judgment for appellee in the sum of $4,132.91, from which this appeal, appellant assigning as error the court's action in overruling appellant's petition to stay proceedings, the conclusion of law, and the rulings on the motion for a *venire de novo,* and for a new trial.

Appellant's petition for stay of proceedings is quite long, and nothing is gained in more than briefly stating it. After stating the facts, substantially as in the findings, as to the transfer of the testator's funds from his account to the account of his son, who was an intermeddler, the petition recites that such son thereafter checked out $3,439.36 which was distributed to himself and his brothers and sisters as legatees, which sums were not to be paid to them until the widow's death, and other items until there was left in bank but $790.18, which was paid to appellee. It then mentions the house and lot in Williamsport, which under the terms of the will was not to be sold until after the death of the widow. It then mentions the legacy of $5,000 to the widow, which, under the terms of the will, was first to be paid out of the assets, after the payment of the debts and expenses of administration, and which legacy has not been paid. It asks for a stay of proceed-

ings herein until the sale of said house and lot by the administrator, and for a reasonable time within which to pursue the "status of such account as to advancements." We assume that this means in effect to pursue and recover, if possible, the illegal distributions. We confess that we have some difficulty to classify this petition in civil procedure. If it is a plea in abatement, and it was duly verified, it was not filed until after plea in bar, and hence was too late. It shows on its face that more than two years had elapsed since appellant discovered that it was dealing with an intermeddler, and it does not appear that any steps had been taken to follow the fund paid out illegally. At most, such petition was an appeal to the discretionary powers of the court, and such discretion was not abused by refusing to stay proceedings for an indefinite time, and until said real estate could be sold by the administrator, which, by the terms of the will was not until the death of the widow, during all of which time the widow must be deprived of her legacy which was to be paid to her first after the debts and expenses of administration were paid. There was no error in overruling the petition to stay proceedings. No error is presented as to the court's action in overruling the motion for a new trial, as none of the reasons for the motion is discussed as ground for reversal. No question is presented by the court's action in overruling the motion for a *venire de novo*, for the reason that the motion does not disclose any ground upon which it was made. *Perley* v. *Schmidt Cut Stone Co.* (1911), 48 Ind. App. 344, 95 N. E. 616.

Appellant next contends that the court erred in its conclusion of law stated upon the special findings of fact. It appears by these findings that the bank was chargeable with funds received which belonged to the estate of Jonathan Hess, the sum of $5,968.17. As this charge is not controverted we do not need to set out the

items thereof.  By these findings the court has given credit to appellant for the following items:

| | | |
|---|---|---|
| (10) Finding Cash paid appellee as administrator | | $790.18 |
| (11) Finding    "      "    funeral expenses and taxes | | 428.10 |
| (12 & 15) Finding Cash paid widow on legacy. | | 848.41 |
| (16) Finding Cash paid debts of deceased... | | 666.73 |
| Total | | $2,733.42 |

Appellee contends that finding No. 16 as stated by the court is only a conclusion of law and that as such it should be ignored.  This finding is as follows:

4.   *FINDING No. 16*—The court further finds that the sum of $666.73 was paid to various parties by said L. A. Hess while acting as such pretended administrator, which sums were proper charges against the estate of Jonathan Hess, deceased, but not chargeable as against the bequests to the widow Mary Hess.

The line of demarcation between a finding of an ultimate fact and a conclusion of law is not always easy to determine.  In the case of *State, ex rel.,* v. *Williams* (1906), 39 Ind. App. 376, 77 N. E. 1137, the action was against appellee for the recovery of certain fees alleged to have been by him collected and not paid over to the county.  There was a special finding of facts and conclusions of law.  Under finding No. 7 it was found that the sum of $2,965.29 "was illegal and excessive fees collected and taxed in violation of law and in excess of fees taxable and chargeable by law."  It was the contention of appellant that this statement was a mere conclusion of law, but this court held with the trial court that it did not so regard the finding.

In *Minnich* v. *Darling* (1894), 8 Ind. App. 539, 33 N. E. 173, it was held that a conclusion that one by his acts, as set forth in such finding, ratified the acts of a

contractor and became bound for materials and liable therefor, is a conclusion of fact and not of law.

In *Ybarra* v. *Sylvany* (1893), 3 Cal. Unrep. 749, 31 Pac. 1114, the action was to quiet title, and it was held that a finding that the plaintiff was the owner in fee and entitled to the possession of certain real estate, was a finding of an ultimate fact and not a conclusion of law.

In *Prescott* v. *Leonard* (1883), 32 Kans. 142, 4 Pac. 172, the court held that a finding that "at the time this suit was commenced the plaintiff was the legal owner of said note, and with the consent of the bank had the right to sue for and recover the amount thereof; and that there is now due from the defendant to the plaintiff thereon the sum of $232.60" was not merely a conclusion of law.

In *Snyder* v. *Emerson, Auditor* (1899), 19 Utah 319, 57 Pac. 300, it was held that a finding that one was "duly" appointed to an office was not a conclusion of law.

In *Weidenmueller* v. *Stearns, etc., Co.* (1900), 128 Cal. 623, 61 Pac. 374, the action was to restrain defendant from changing the level of an irrigation canal from which the plaintiff claimed a prescriptive right to take water from the existing level, and it was held that a finding that the plaintiff had no prescriptive or other right to receive water from said canal at any other level than the bottom of the canal, was a finding of fact and not a conclusion of law.

In *Herrick* v. *Boquillas Cattle Co.* (1905), 200 U. S. 96, 26 Sup. Ct. 192, 50 L. Ed. 388, it was held that a finding that plaintiff and its predecessors since a certain date had been, and plaintiff still was, the owner and entitled to possession of premises was a statement of an ultimate fact and not a mere conclusion of law.

We are not unaware that there are authorities to the contrary, but in the light of the foregoing we think we are justified, for the purposes of this appeal, in hold-

ing that the court's finding that there were valid claims against the estate of Jonathan Hess in the sum of $666.73 was a statement of ultimate fact, rather than a conclusion of law.

But by finding No. 17 the court has found that there was due appellee from appellant $3,662.86, with interest, and its conclusion of law is that appellee is entitled to recover from appellant said sum of $3,662.86 with interest.   The difference between this amount and the amount actually due after deducting the sum of the specific items of indebtedness found is $428.10 and as it seems to us it is clear that the court has disallowed the $428.10 found in finding No. 11 which as appears by such finding, was paid out for funeral expenses and taxes.   This was a proper application of the assets of the estate of the deceased through the medium of checks issued by the administrator de son tort, who was a son of the deceased, and an heir or legatee, which checks were honored by the bank, and the bank sued as it was, for the misappropriation of the funds of the estate should have been given a credit for the amount so applied to the discharge of the legitimate debts. Reagan v. Long's Admx. (1863), 21 Ind. 264; Brown's Admr. v. Sullivan (1864), 22 Ind. 359, 85 Am. Dec. 421; Pease v. Christman (1902), 158 Ind. 642, 64 N. E. 90.

As there is some uncertainty as to whether appellant has received a proper credit for the said sum of $428.10, it is the opinion of this court that the ends of justice will be best attained by granting a new trial. The judgment is, therefore, reversed with instruction to the trial court to grant a new trial.

PETITION FOR MODIFICATION OF MANDATE.

NICHOLS, C. J.—Appellee has filed his petition to modify the court's mandate reversing the judgment in this cause, and offers therein to remit from his judgment

the sum of $428.10 mentioned in the opinion.   The mandate is therefore modified to read as follows:

The judgment is affirmed upon condition that appellee cause to be filed in this court on or before June 14, 1923, the certificate of the clerk of the Tippecanoe Superior Court that appellee has filed his remittitur of $428.10 of the judgment as of the date thereof.   Otherwise the judgment is reversed with instructions to grant a new trial.

## FINAL MANDATE.

NICHOLS, J.—June 7, 1923, appellee filed certificate of clerk of Tippecanoe Superior Court, showing remittitur of $428.10 of the judgment, together with the interest on said sum from March 3, 1920, to April 22, 1922, in compliance with the mandate of this court.   The judgment is therefore finally affirmed in accordance with the judgment heretofore entered herein.